UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHELLY RAMIREZ,

                Plaintiff,                                    Hon. Ellen S. Carmody

v.                                                  Case No. 1:14-CV-943

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
_____/


**<u>OPINION</u>**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  On November 26, 2014, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (Dkt. #10).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

2

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 30 years of age on her alleged disability onset date. (Tr. 26, 314). She successfully completed high school and previously worked as a short-order cook, appliance assembler, and a temporary laborer. (Tr. 38). Plaintiff applied for benefits on March 6, 2009, alleging that she had been disabled since February 28, 2001. (Tr. 314-21). Plaintiff later amended her disability onset date to June 1, 2006. (Tr. 26).

Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 140-313). On June 16, 2011, Plaintiff appeared before ALJ James Prothro with testimony being offered by Plaintiff and a vocational expert. (Tr. 99-139). In a written decision dated July 29, 2011, the ALJ determined that Plaintiff was disabled beginning on April 4, 2011. (Tr. 146-52). Plaintiff was informed that if she appealed this determination, "the Appeals Council would consider the entire case, even the parts [Plaintiff] might agree with." (Tr. 161). Plaintiff nevertheless appealed this determination arguing that she was disabled prior to April 4, 2011. (Tr. 263-65).

On September 24, 2012, the Appeals Council vacated the ALJ's decision and remanded the matter for further consideration. (Tr. 161-63). In its decision, the Appeals Council noted, in part, that the ALJ "cited no medical evidence" in support of his conclusion that Plaintiff's impairment satisfied section 1.04 of the Listing of Impairments. (Tr. 161). The Appeals Council

also concluded that the ALJ failed to adequately evaluate the relevant opinion evidence or properly assess Plaintiff's mental impairment(s).  (Tr. 161-62).

On March 20, 2013, the ALJ conducted a second administrative hearing at which Plaintiff, a vocational expert, and a medical expert testified.  (Tr. 47-98).  In a decision dated April 9, 2013, the ALJ concluded that Plaintiff was not disabled from June 1, 2006, through the date of his decision.  (Tr. 26-39).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 1-5).  Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional

---

[1]1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) degenerative disc disease of the lumbar spine; (2) status post L4-5 laminectomy; (3) degenerative disc disease of the cervical spine; (4) status-post old C6 compression fracture, with C5-6 disc bulge; (5) morbid obesity; (6) borderline intellectual functioning; (7) specific learning disabilities in reading, writing, and math, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 29-30). With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff retained the ability to perform sedentary work subject to the following limitations: (1) she cannot climb ladders, ropes, or scaffolds; (2) she cannot crawl, kneel,

or crouch; (3) she can only occasionally balance, stoop, or climb ramps/stairs; and (4) she is limited to simple, repetitive tasks involving no fast-paced work.  (Tr. 30).

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden.  *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding.

The vocational expert testified that there existed approximately 4,300 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (Tr. 86-91).  This represents a significant number of jobs.  *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).  Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.              **Section 1.04 of the Listing of Impairments**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled.  Plaintiff asserts that she is entitled to relief because she satisfies the requirements of Section 1.04 of the Listing of Impairments.

Section 1.00 of the Listing addresses disorders of the musculoskeletal system, including those resulting from "degenerative processes, traumatic or developmental events."  20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.00.  Plaintiff asserts that she satisfies Sections 1.04(A) and 1.04(C) which provide as follows:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root. . .or the spinal cord.
>
> [Combined w]ith:
>
> A.      Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or. . .
>
> C.      Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.[2]

_____

[2] Section 1.00(B)(2)(b) defines "inability to ambulate effectively" as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.02(B)(2)(b)(1).  Ineffective ambulation "is defined generally as having

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04.

The medical evidence does not support the contention that Plaintiff satisfies this particular Listing. On August 6, 2010, Plaintiff underwent a laminectomy and diskectomy at L4-L5. (Tr. 669-70). A November 4, 2010 examination revealed 5/5 strength and "fairly normal" sensation. (Tr. 682). Plaintiff was "able to walk with a slight limp, but otherwise [exhibited] no significant abnormalities." (Tr. 682). While Plaintiff reported experiencing pain, it was noted that her complaints of pain were "somewhat random." (Tr. 682). An MRI examination of Plaintiff's lumbar spine "showed no significant compression." (Tr. 682). A February 23, 2011 MRI of Plaintiff's lumbosacral spine revealed postoperative changes at L4-L5 with "moderate" disc space narrowing. (Tr. 800). A March 16, 2011 MRI of Plaintiff's cervical spine revealed "multilevel mild degenerative changes." (Tr. 804).

The evidence reveals that while Plaintiff suffers a severe spinal impairment, such does not satisfy the requirements of the Listing in question. The burden rests with Plaintiff to demonstrate that she satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). The ALJ evaluated the evidence of record and determined that Plaintiff failed to meet her burden. The ALJ's decision in this regard is supported by substantial evidence.

---

insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* To ambulate effectively, claimants "must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out the activities of daily living." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.02(B)(2)(b)(2).

II.                    **Treating Physician Doctrine**

On May 20, 2011, Dr. Pam Wirth completed two forms regarding Plaintiff's ability to perform physical and mental work-related activities.  (Tr. 818-25).  The ALJ discounted Dr. Wirth's opinions finding that they were "overstated" and inconsistent with the evidence.  (Tr. 37). Plaintiff asserts that because Dr. Wirth was her treating physician, the ALJ was obligated to afford controlling weight to her opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."  *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*,

839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

       If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

       If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

Dr. Wirth asserted that Plaintiff suffers from extreme physical and emotional limitations. With respect to Plaintiff's non-exertional limitations, the doctor reported that Plaintiff experiences "marked limitations"[3] in the following areas: (1) use judgment; (2) deal with work stresses; (3) maintain attention/concentration; and (4) perform activities of daily living. (Tr. 818-19). The doctor reported that Plaintiff experienced "moderate limitations"[4] in the following areas: (1) relate to co-workers; (2) deal with the public; (3) interact with supervisors; (4) function independently; (5) understand, remember, and carry out detailed but not complex job instructions; (6) behave in an emotionally stable manner; (7) demonstrate reliability; (8) maintain social functioning; and (9) maintain concentration, persistence or pace. (Tr. 818-19). The doctor also reported that Plaintiff had previously experienced "four or more" "episodes of decompensation each of extended duration." (Tr. 819).

The ALJ discounted these opinions on the ground that such were inconsistent with Plaintiff's treatment history and reported activities, as well as evidence that Plaintiff "was primarily interested in supplementing the record for her disability claim, and not so much interested in seeking care for any mental dysfunction." (Tr. 37). The ALJ's rationale is supported by the record. Plaintiff expressed to counselors that she did not want "help with a job, school, or stuff like that," but instead just wanted "to see if I can get SSI." (Tr. 642, 651). The ALJ is correct that Plaintiff does not appear to have followed through with recommendations to obtain counseling or other mental health treatment. There is likewise no evidence in the record that Plaintiff experienced episodes of

---

[3] The form that Dr. Wirth completed defined "marked limitations" as "limitations that seriously, but not completely, interfere with the ability to function independently, appropriately and effectively on a sustained basis." (Tr. 818).

[4] The form that Dr. Wirth completed defined "moderate limitations" as "limitations that result in satisfactory but limited function." (Tr. 818).

decompensation. Finally, the evidence contradicts the doctor's assertion that Plaintiff experiences serious limitations in the activities of daily living. (Tr. 450-57, 462-69).

As for Plaintiff's physical limitations, Dr. Wirth reported that during an 8-hour workday, Plaintiff can sit for 4 hours, stand for 30 minutes, sit/stand "as needed" for 4 hours, but can "never" walk. (Tr. 822). The doctor reported that Plaintiff can "occasionally" lift 10 pounds, but can "never" lift 20 pounds. (Tr. 822). The doctor reported that Plaintiff can "occasionally" carry 5 pounds, but can "never" carry 10 pounds. (Tr. 822). The doctor also reported that Plaintiff can "never" squat, kneel, crouch, crawl, stoop, or climb stairs. (Tr. 823). The ALJ discounted Dr. Wirth's opinions on the ground that such were contradicted by the medical evidence. (Tr. 37). As noted above, the medical evidence does not support Dr. Wirth's opinions. In sum, the ALJ's rationale for discounting Dr. Wirth's opinions is supported by substantial evidence. Accordingly, this argument is rejected.

## III.        Plaintiff's Credibility

At the administrative hearing, Plaintiff testified that she was unable to work because she experiences back pain and numbness in her lower extremities. (Tr. 59-61, 65-66). Plaintiff testified that she cannot lift more than five pounds. (Tr. 71). Plaintiff reported that she experiences difficulty standing and simply falls down 3-4 times monthly. (Tr. 66-67). Plaintiff also reported that she is unable to get dressed by herself. (Tr. 67-68). Plaintiff reported that she experiences difficulty concentrating and socializing. (Tr. 68-70). The ALJ discounted Plaintiff's testimony that she suffers from extreme and disabling limitations. (Tr. 30-37). Plaintiff asserts that she is entitled to relief because the ALJ's rationale for discounting her statements is not supported by substantial evidence.

12

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same).   As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).  Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan* standard.  *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to

resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

The ALJ examined the evidence of record in detail and concluded that such undermined Plaintiff's credibility. This conclusion is supported by substantial evidence as the evidence discussed above reveals. Accordingly, this argument is rejected.

14

**CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  A judgment consistent with this opinion will enter.


Date:  September 17, 2015                                   /s/ Ellen S. Carmody_____
                                                                         ELLEN S. CARMODY
                                                                         United States Magistrate Judge

15